# EXHIBIT 1

**2009 WL 361413**
United States District Court,
S.D. Texas,
Houston Division.

Joann HUFFMAN, Plaintiff,
v.
CITY OF CONROE, TEXAS, Defendant.

Civil Action No. H–07–1964. | Feb. 11, 2009.

**Attorneys and Law Firms**

Margaret Ann Harris, Paul Robert Harris, Bulter and Harris, Houston, TX, for Plaintiffs.

William Scott Helfand, Barbara Elliot Roberts, Chamberlain Hrdlicka et al, Houston, TX, for Defendants.

### *MEMORANDUM AND ORDER*

NANCY F. ATLAS, District Judge.

**\*1** This case arises from events occurring during the employment of Plaintiff JoAnn Huffman ("Huffman") by Defendant City of Conroe, Texas (the "City") and the cessation of that employment. The City has filed a Motion for Summary Judgment [Doc. # 116] ("City's Motion") on all claims Huffman asserts in this case.[1] Huffman has filed a Motion for Partial Summary Judgment [Doc. # 115] ("Huffman's Motion"), in which she seeks summary judgment on the City's affirmative defense that she failed to mitigate her damages.[2] Upon review of the parties' submissions, all pertinent matters of record, and applicable law, the Court concludes that the City's Motion should be **denied** and Huffman's Motion should be **granted.**

The City has also filed a Motion to Strike Plaintiff's Declaration [Doc. # 127] and a Motion to Strike Plaintiff's Exhibits F, K and V [Doc. # 139].[3] Huffman has similarly filed a Motion to Strike Certain "Evidence" Offered in Support of Defendant's Motion for Summary Judgment [Doc. # 126].[4] The Court will rule on these motions only to the extent that the Court relies on information to which a party objects.

**I.** *FACTUAL BACKGROUND*

The background facts can be briefly summarized as follows. Huffman was hired as a code enforcement officer with the City's Fire Department in January 2000. As a code enforcement officer, Huffman was primarily responsible for identifying and demolishing unsafe structures that violated City codes. Huffman's direct supervisor was the City's Fire Marshal, Robert Matheson ("Matheson"). Matheson in turn reported to the City's Fire Chief, who was Huffman's department head. At the time she was hired, Huffman worked with fellow code enforcement officer Curtis Cooper ("Cooper") who trained her in the procedures she should follow as a code enforcement officer. From the time Huffman was hired until August 2005, Bland Ellen ("Ellen") was the City's Fire Chief.

In December 2005, the City hired Ken Kreger ("Kreger") as Fire Chief. The parties vigorously contest what happened from the time Kreger was hired until April 13, 2006, when the City informed Huffman that her employment was terminated effective the previous day. The City contends that during Kreger's attempts to familiarize himself with his new job and implement cross-training policies, Kreger became concerned about Huffman's opposition to cross-training. Accordingly, Kreger began investigating Huffman's work and files. The City contends that Kreger's investigation led him to believe that Huffman had violated City policies and state purchasing laws. In order to complete his investigation, Kreger placed Huffman, a junior code enforcement officer Tom Sivley ("Sivley"), and their supervisor, Matheson, on paid administrative leave. After completing his investigation, Kreger reported that he concluded that Huffman had repeatedly (1) engaged in improper separate and sequential but related purchases of demolition services in violation of state and City policies; (2) improperly hired a demolition company without obtaining bids or quotes, or failed to document having done so, as required by City policy; (3) failed to maintain proper documentation pertaining to the expenditure of funds and demolitions; and (4) authorized at least one payment to a demolition company for demolition work not done. According to the City, these were the reasons Kreger terminated Huffman's employment for misconduct effective April 12, 2006.

**\*2** In contrast, Huffman contends that Kreger was disrespectful to her from the time that he was hired. Specifically, Huffman contends that Kreger tolerated other employees' derogatory comments about her Mexican or Hispanic heritage and that on several occasions Kreger made derogatory comments about her gender, namely, that she was "a woman doing a man's

job," that she was "too strong for a woman," and that she needed to be "more gentle" like the secretaries. Huffman also contends that Kreger made efforts to make her life at work miserable, most importantly, by taking away the code enforcement secretary, which she deemed critical to proper and efficient performance of her duties.

As a result, on April 5, 2006, Huffman met with the City's Human Resources Director, Melissa Davidson ("Davidson") to file a grievance against Kreger. What happened during the course of this meeting is disputed. Huffman contends that she detailed instances of Kreger's derogatory comments and other employees' derogatory comments about her Mexican or Hispanic heritage, and that Davidson told her to think carefully about what she wanted to do, gave her a blank grievance form to complete, and told her she could file a grievance at a later date. Davidson contends that Huffman refused to provide details of any allegedly discriminatory incidents and that Davidson informed Huffman she needed to present her complaint in writing setting forth details of the allegedly discriminatory incidents. Later in the afternoon on April 5, 2006, Huffman was informed that she had been placed on paid administrative leave.

On April 13, 2006, Huffman had another meeting with Davidson. Kreger also attended the meeting. At this meeting, Kreger told Huffman that her employment had been terminated effective the previous day, April 12th. Huffman later filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued Huffman a right to sue letter and she timely filed this lawsuit.

II. *LEGAL STANDARD*
Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir.2002). In deciding a motion for summary judgment, the Court must determine whether the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp.,* 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.,* 529 F.3d 335, 339 (5th Cir.2008).

*3 For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna,* 401 F.3d 347, 349 (5th Cir.2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.,* 402 F.3d 536, 540 (5th Cir.2005). The moving party may meet its burden by pointing out " 'the absence of evidence supporting the non-moving party's case.' " *Duffy v. Leading Edge Products, Inc.,* 44 F.3d 308, 312 (5th Cir.1995) (quoting *Skotak,* 953 F.2d at 913). However, if the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the non-movant's response. *ExxonMobil Corp.,* 289 F.3d at 375.

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.,* 268 F.3d 275, 282 (5th Cir.2001). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson,* 420 F.3d 532, 536 (5th Cir.2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the non-moving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.,* 336 F.3d 410, 412 (5th Cir.2003). However, factual controversies are resolved in favor of the non-movant "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir.1999). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A & B Builders, Inc.,* 302 F.3d 531, 545 n. 13 (5th Cir.2002) (noting that unsworn pleadings do not constitute proper summary judgment evidence). Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not meet this burden. *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir.1998). Instead, the non-moving party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case." *Id.* In the absence of any proof, the court may not assume that the non-movant could or would prove the necessary facts at trial. *Little,* 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)).

## III. ANALYSIS

**A.** *City's Motion for Summary Judgment*
Huffman asserts three claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*[5] She alleges that the City unlawfully discriminated against her on the basis of her gender, that the City unlawfully discriminated against her because of her national origin, and that the City unlawfully retaliated against her because she complained of discrimination. The City contends that Huffman lacks evidence to satisfy the requirements of proof necessary for each of these theories and, thus, the City is entitled to summary judgment.

**1. Title VII National Origin and Gender Discrimination Claims**
**\*4** Unlawful discrimination under Title VII can be established through either direct or circumstantial evidence. *Wallace v. Methodist Hosp. Sys.,* 271 F.3d 212, 219 (5th Cir.2001) (citing *Urbano v. Cont'l Airlines, Inc.,* 138 F.3d 204, 206 (5th Cir.1999)). Huffman does not appear to rely on direct evidence of discrimination. The Court therefore uses the circumstantial evidence test set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see also Okoye v. Univ. of Tex. Houston Health Sci. Ctr.,* 245 F.3d 507, 512 (5th Cir.2001).

Under this test, Huffman must initially establish a *prima facie* case of gender or national origin-based discrimination in order to raise a presumption of discrimination. *Id.; see also Rutherford v. Harris County,* 197 F.3d 173, 179–80 (5th Cir.1999). If successful, the burden then shifts to the City to articulate a legitimate, nondiscriminatory reason for its actions. *Okoye,* 245 F.3d at 512. If the City sustains its burden, "the presumption of discrimination dissipates." *Wallace,* 271 F.3d at 220 (citing *Russell v. McKinney Hosp. Venture,* 235 F.3d 219, 222 (5th Cir.2000)). The burden then "shifts back to [Huffman] to establish: (1) that the employer's proffered reason is not true[,] but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." *Alvarado v. Tex. Rangers,* 492 F.3d 605, 611 (5th Cir.2007) (citing *Rachid v. Jack in the Box, Inc.,* 376 F.3d 305, 312 (5th Cir.2004)). "The plaintiff bears the ultimate burden of persuading the trier of fact ... that the employer intentionally discriminated against her because of her protected status. *Wallace,* 271 F.3d at 220 (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511–12, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

**a.** *Prima Facie* Case
To establish a *prima facie* case of gender or national origin discrimination, Huffman must show that (1) she is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) she was replaced by someone outside the protected class or, in the case of disparate treatment, that similarly situated employees were treated more favorably. *Nasti v. CIBA Specialty Chemicals Corp.,* 492 F.3d 589, 593 (5th Cir.2007) (citing *Okoye,* 245 F.3d at 512–13).

*Member of a Protected Class (Gender Claim).* The City does not contest that Huffman is female and therefore is a member of a protected class for purposes of her gender discrimination claim.

*Member of Protected Class (National Origin Claim).* The City argues that Huffman is not a member of a protected class for purposes of her national origin discrimination claim. Specifically, the City disputes Huffman's national origin is Mexican–American or Hispanic.

**\*5** "National origin" is defined broadly for purposes of a Title VII claim and "refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came." *Espinoza v. Farah Mfg. Co., Inc.,* 414 U.S. 86, 88, 94 S.Ct. 334, 38 L.Ed.2d 287 (1973); *see also Ash v. Guajardo,* 72 F. App'x 143, 145 (5th Cir.2003) (unpublished). EEOC guidelines define national origin discrimination "broadly as including, but not limited to, the denial of equal employment opportunity because of an individual's, or his or her ancestor's, place of origin; or because an individual has the physical, cultural or linguistic characteristics of a national origin group." 29 C.F.R. § 1606.1. The City does not contest that Hispanics qualify as a national origin group.[6]

To prevail, Huffman must show that she is a member of the national origin group upon which her claims are based—that is, that she is or her ancestors were Mexican or Hispanic, or that she is an individual with the "physical, cultural or linguistic characteristics of a national origin group." *See* 29 C.F.R. § 1606.1. It is not, however, required that a plaintiff "show that an alleged *discriminator* knew the *particular* national origin group to which the complainant belonged .... [I]t is enough to show

that the complainant was treated differently because of his or her foreign accent, appearance, or physical characteristics." *E.E .O.C. v. WC & M Enterprises, Inc., 496 F.3d 393, 402 (5th Cir.2007)* (citing *45 Fed.Reg. 85,632 & 85,633*) (emphasis added).

It is a close question whether Huffman has met her summary judgment burden as to whether she is in fact of Mexican or Hispanic heritage. She testifies that she was born in the United States, as was her father, Louis Garza. Huffman has also testified that she does not know how far back she would have to go in her family tree to find someone on her father's side who was not born in the United States.[7] She reports also that although her father's parents died when her father was very young, and she does not know if her father's parents were citizens of Mexico, after his parents' death, her father was raised by his brother who was born in Mexico City.[8] The Court finds that Huffman's evidence suggests that it is in the interest of justice to defer a ruling on this threshold issue. At trial the Court will evaluate whether or not Huffman has evidence to support a verdict that she actually is of Mexican or Hispanic heritage.

As to whether Huffman has Mexican or Hispanic physical, cultural or linguistic characteristics, Huffman has only a little potential evidence. *See* *29 C.F.R. § 1606.1*. She reports that she has always considered herself Mexican–American.[9] However, "unlawful discrimination must be based on [plaintiff's] objective appearance to others, not his subjective feeling about his own ethnicity." *Bennun v. Rutgers State Univ., 941 F.2d 154, 173 (3d Cir.1991).* Huffman states that others perceived her as Mexican or Hispanic because she has the "physical, cultural or linguistic characteristics of a national origin group," *see* *29 C.F.R. § 1606.1*, in that she speaks Spanish, others relied on her to communicate with third parties in Spanish, and she was called a "Mexican" by a co-worker Will Wilkinson.[10] This evidence is of questionable weight. However, the Court elects to defer this issue until the time of trial when it more accurately can determine whether evidence is sufficient to support a jury verdict in Huffman's favor that she is a member of a protected class for purposes of her national origin discrimination claim. At the trial, the Court will have an opportunity to observe Huffman, hear the live evidence, and make more informed determinations not possible on a written record. The City's Motion is therefore denied without prejudice on whether Huffman can establish that she is a member of a protected group. The Court accordingly proceeds with the balance of the *McDonnell Douglas* analysis.

*6 *Qualified for Her Position (Gender and National Origin Claims).* The City argues that Huffman was not qualified for her code enforcement officer position because she failed to conform her workplace conduct to Kreger's legitimate expectations by violating the City's purchasing policies and state purchasing laws. Huffman responds that she was qualified because she continued to possess the necessary qualifications for her job at the time her employment was terminated. The City's argument fails.

The City's cited Sixth and Eighth Circuit authorities[11] in support of its position are not controlling on this Court. Significantly, the Fifth Circuit in an analogous context reached a contrary conclusion. "[A] plaintiff challenging his termination ... can ordinarily establish a prima facie case of ... discrimination by showing that he continued to possess the necessary qualifications for his job at the time of the adverse action.... By this we mean that plaintiff [may show that he] had not suffered physical disability or loss of a necessary professional license or some other occurrence that rendered him unfit for the position for which he was hired." *Bienkowski v. Am. Airlines, Inc., 851 F.2d 1503, 1506 & n. 3 (5th Cir.1988)* (ADEA case).[12]

Huffman has raised a genuine fact issue that she possessed the necessary professional qualifications and licenses at the time she was initially hired by the City and that she had not lost any of these qualifications and licenses before her employment was terminated. The fact that Kreger may have disagreed with the way Huffman did part of her job does not establish she lacked qualifications to do the work. Huffman, therefore, satisfies the second element of her *prima facie* case.

*Adverse Employment Action (Gender and National Origin Claims)* . The City does not dispute that Huffman suffered an adverse employment action either when she was placed on administrative leave or when her employment was terminated. *See Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)* (defining an adverse employment action as something that "a reasonable employee would have found ... materially adverse.").

*Replaced by Someone Outside the Protected Class (Gender Claim).* The City does not dispute that Huffman was replaced by a male and therefore satisfies the final element of her *prima facie* case of gender discrimination. Because Huffman has satisfied her burden of establishing a *prima facie* case of gender discrimination, the burden shifts to the City to articulate a legitimate, nondiscriminatory reason for its actions on Huffman's gender-based claim. *Okoye,* 245 F.3d at 512.

*Replaced by Someone Outside the Protected Class or a Similarly Situated Employee Was Treated More*

*Favorably (National Origin Claim).* The City argues that Huffman cannot establish her *prima facie* case because she cannot prove that she was replaced by someone outside the protected class. More specifically, the City argues that it replaced her with a male Hispanic. This fact does not end the inquiry, however. "[I]t is well settled that, although replacement with a non-member of the protected class is evidence of discriminatory intent, it is not essential to the establishment of a *prima facie* case under Title VII." *Williams v. Trader Pub. Co.,* 218 F.3d 481, 484 (5th Cir.2000). Because Huffman's claim is a disparate treatment national origin claim, she may satisfy her burden on the fourth element of her *prima facie* case by demonstrating circumstantially that one or more similarly situated non-Mexican-American or non-Hispanic employees were treated more favorably than she was. *See Nasti,* 492 F.3d at 593; *Williams,* 218 F.3d at 484 (5th Cir.2000) (citing *Polanco v. City of Austin,* 78 F.3d 968, 977 (5th Cir.1996)).

**\*7** To satisfy the "similarly situated" requirement in cases involving separate or distinct incidents of misconduct, the plaintiff and the allegedly similarly situated non-protected employee must have "circumstances, including their misconduct," that are "nearly identical." *Berquist v. Washington Mut. Bank,* 500 F.3d 344, 353 (5th Cir.2007); *Perez v. Tex. Dept. of Criminal Justice,* 395 F.3d 206, 213 (5th Cir.2004); *Smith v. Wal–Mart Stores,* 891 F.2d 1177, 1180 (5th Cir.1990) ("[plaintiff's] burden is to show 'that the misconduct for which she was discharged was nearly identical to that engaged in by a male employee whom [the company] retained.' " (quoting *Davin v. Delta Air Lines, Inc.,* 678 F.2d 567, 570 (5th Cir. Unit B 1982))). Moreover, the "alleged comparator employees [must have been] similarly situated from the perspective of their employer at the time of the relevant employment decision [ ]." *Perez,* 395 F.3d at 209. Typically, the comparator employees' position in organization—*e.g.,* job title, duties, supervisor—should be roughly the same. *See, e.g., Wyvill v. United Cos. Life Ins. Co.,* 212 F.3d 296, 305 (5th Cir.2007) (considering job titles, divisions of the company, managers, and the circumstances of the comparators' job terminations); *Ramirez v. Gonzales,* 225 F. App'x 203, 207–08 (5th Cir.2005); *Little v. Republic Ref. Co., Ltd.,* 924 F.2d 93, 97 (5th Cir.1991). In sum, Huffman must demonstrate that her employment position and her misconduct were "nearly identical" to that of a non-Mexican-American or non-Hispanic employee that the City retained.

Huffman urges that the two other individuals in the Fire Department involved in demolition work, Sivley and Matheson, were similarly situated employees who were treated more favorably in that their employment was not terminated (or even disciplined in any way) despite their engaging in the same allegedly wrongful conduct for which she was punished. Huffman first contends that Sivley "admits to engaging in the same allegedly wrongful conduct that [she] employed."[13] The evidence does not support this characterization of Sivley's testimony. Sivley testified that, because his prior job had not included demolitions, Huffman was training him and that "she would only let [him] work a demolition case up to a certain point and then she would take it over from there."[14] More specifically, he testified that he never got bids from contractors because "when it got to that point, I would—Miss Huffman would be the one that would be getting the contractor for me."[15] Huffman points to no contrary evidence. Thus, Sivley is not a viable comparator as he was not similarly situated to Huffman on her national origin disparate treatment claim.

Huffman alternatively argues that Matheson was similarly situated because he "approved just as many invoices for payment" as she did and he "concurred in her allegedly wrongful bidding practices."[16] The Court concludes that Huffman raises a genuine fact issue on the "substantially similar" question at this stage of this case. While Matheson was Huffman's supervisor and thus did not hold precisely the same job as she, he and she appear from the record to have had certain similar pertinent work duties, namely, approval of demolition contracts and contractors for specific demolition jobs. It appears from the summary judgment record, when the evidence is construed in the light most favorable to the non-movant, Huffman, that a jury could reasonably conclude that both Huffman and Matheson were closely involved in approving the demolition projects about which Kreger was concerned and that were allegedly the focus of Kreger's and the City's termination decision. Matheson was given a full opportunity to explain his role and was not disciplined in any way, despite the fact that he apparently expressly approved the procedures Huffman used and Kreger questioned. The details of Matheson's and Huffman's pertinent demolition duties must be developed at trial in order for the Court to determine as a matter of law whether these individuals' circumstances in fact were "nearly identical" or not.[17]

**\*8** Because Huffman has satisfied her burden of establishing a *prima facie* case of national origin discrimination, the burden shifts to the City to articulate a legitimate, nondiscriminatory reason for its actions on Huffman's national origin-based claim. *Okoye,* 245 F.3d at 512.

### b. Legitimate Nondiscriminatory Reason
The City's burden at the summary judgment stage is one

of production, not proof. The City may meet this burden "through the introduction of admissible evidence, reasons for its action which, 'if believed by the trier of fact,' would support a finding that unlawful discrimination was not the cause of the employment action." *Brown v. Bunge Corp.,* 207 F.3d 776, 781 (5th Cir.2000) (citing *Hicks,* 509 U.S. at 507) (emphasis in original). "[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory, reason." *Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086, 1091 (5th Cir.1995) (citing *Little v. Republic Refining Co., Ltd.,* 924 F.2d 93, 97 (5th Cir.1991)).

The City argues that Huffman's employment was terminated because Kreger in good faith believed that Huffman had repeatedly disregarded or knowingly violated state and City purchasing policies. Huffman argues that the City's proffered reason is insufficient to satisfy its burden because the City has not stated its reason for terminating her employment with sufficient clarity and reasonable specificity to afford her a full and fair opportunity to demonstrate pretext.[18] The Court disagrees. Chief Kreger in his affidavit[19] states with adequate specificity some reasons that, if believed by the jury, would support a finding that unlawful discrimination was not the cause of the termination of Huffman's employment. The City's articulated reason is further supported by affidavit testimony of Marcus Winberry ("Winberry"),[20] the City Attorney for the City, who states that, after his personal review of Huffman's files, he recommended that liens not be placed on a majority of the properties Huffman had contracted to demolish. Winberry testified that he made this recommendation because he was concerned that, if an owner challenged the City's lien, the amount paid to demolition companies could not be proved to be reasonable, legal, and legitimate. The City's explanation is sufficient to satisfy its burden of production to articulate a legitimate nondiscriminatory reason for the termination of Huffman's employment.

### c. Pretext—Gender and National Origin Claims

Because the City has articulated a legitimate, nondiscriminatory reason for Huffman's termination, the burden shifts back to Huffman to establish (1) that the City's proffered reason is not true but rather a pretext for discrimination, or (2) that even if the City's reason was true, that another motivating factor for Huffman's termination was her protected characteristic. *See Alvarado,* 492 F.3d at 611. Huffman may meet this burden by showing that the City's proffered legitimate nondiscriminatory reason is "unworthy of credence." *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). "Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." *Reeves,* 530 U .S. at 147 (citing *Hicks,* 509 U.S. at 517) ("[P]roving the employer's reason false becomes part of (and often considerably assists) the greater enterprise of proving that the real reason was intentional discrimination")).[21]

**\*9** The City stresses that Huffman cannot simply rely on her own subjective belief that she was terminated because of discrimination to avoid summary judgment. *See Byers v. Dallas Morning News, Inc.,* 209 F.3d 419, 427 (5th Cir.2000). The Court agrees. However, Huffman has presented sufficient evidence other than her own subjective belief to raise a genuine fact issue that the City's proffered legitimate nondiscriminatory reason was false and thus a pretext for discrimination on gender or national origin grounds, or that bias on these grounds was a motivating factor for the City's termination of her employment. Huffman has presented uncontradicted evidence that she received favorable evaluations in her annual performance reviews throughout her employment with the City.[22] She also has explained that she followed the same procedures as her predecessor, Curtis Cooper, who only used one demolition company over many years.[23] Matheson actively reviewed and supervised Huffman's work for five years and he never discovered any evidence of wrongdoing.[24] Indeed, Matheson testified that "for code enforcement, it had always been our custom to [get formal telephone bids] only once or twice a year, to try to—to find out who—how many contractors are out there that can be done [sic] and what is the price range for that—that period."[25] A reasonable jury could infer from this evidence that Huffman's method of carrying out her demolition duties, even if in technical noncompliance with the City or state's purchasing laws,[26] was in accordance with a reasonable understanding of the established practices of the City's Fire Department.

In addition, Matheson testified that, after learning that Kreger was investigating Huffman, he (Matheson) sent a letter requesting that he be permitted to conduct an investigation.[27] Kreger did not respond and Matheson found it odd that Kreger went outside the normal chain of command to fire Huffman rather than let him, her direct supervisor, investigate the allegations first.[28] There is, as noted above, also evidence that Matheson suffered no punishment—or even criticism—despite the fact that he was Huffman's direct supervisor and was responsible for approving the questionable demotion projects for which it is alleged Huffman lost her job. Further, it appears

Matheson was given a full opportunity to explain to the City's police detectives in the criminal investigation his role and understanding of the City's demolition policies and practices, while Huffman was not.[29] When the evidence of record and reasonable inferences that may be drawn therefrom are viewed in the light most favorable to Huffman, the non-moving party, see *Reeves,* 336 F.3d at 412, Huffman raises a genuine fact issue that the City's proffered legitimate nondiscriminatory reason for the termination of her employment was a pretext for discrimination on the basis of gender or national origin, or that such bias was a motive for the decision.

**\*10** The City accordingly is not entitled to summary judgment on Huffman's gender or national origin discrimination claims.

**2. Retaliatory Discharge Claim**
Huffman also alleges that the City terminated her employment in violation of Title VII in retaliation for her making an oral report of gender and/or national origin discrimination to Davidson on April 5, 2006.[30] Title VII retaliation claims are governed by the same *McDonnell Douglas* burden-shifting test applied to Huffman's discrimination claim. *Septimus v. Univ. of Houston,* 399 F.3d 601, 608 (5th Cir.2005). "Under that framework, the employee's ultimate burden is to prove that the employer's stated reason for the adverse action was merely a pretext for the real, retaliatory purpose." *Id.* However, the employee must first demonstrate a *prima facie* case of retaliation. *Id.* at 607. "To establish a *prima facie* case of retaliation, an employee must demonstrate that (1)[s]he engaged in an activity that Title VII protects; (2)[s]he was subjected to an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action." *Lemaire v. La. Dept. of Transp. & Dev.,* 480 F.3d 383, 388 (5th Cir.2007) (citing *Harvill v. Westward Commc'ns, LLC,* 433 F.3d 428, 439 (5th Cir.2005)).

**a.** *Prima Facie* **Case**
*Engaging in a Protected Activity.* The City does not dispute that an informal internal complaint by an employee is a Title VII protected activity. *See Fierros v. Texas Dept. of Health,* 274 F.3d 187, 194 (5th Cir.2001); *see also Broderick v. Donaldson,* 437 F.3d 1226, 1232 (D.C.Cir.2006) ("While no 'magic words' are required, the complaint must in some way allege unlawful discrimination, not just frustrated ambition."); *Curay–Cramer v. Ursuline Academy of Wilmington, Delaware, Inc.,* 450 F.3d 130, 135 (3d Cir.2006); *Matima v. Celli,* 228 F.3d 68, 78–79 (2d Cir.2000) ("The law protects employees ... in the making of informal protests of discrimination, 'including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or society in general, and expressing support of co-workers who have filed formal charges.' " (quoting *Sumner v. U.S. Postal Service,* 899 F.2d 203, 209 (2d Cir.1990))).

The Court concludes that Huffman has raised a genuine fact issue that she engaged in a protected activity when she met with Davidson to file a grievance on April 5, 2006. Davidson avers that at this meeting Huffman did not provide facts about the alleged discrimination and did not specifically identify Kreger. Huffman, however, controverts this testimony by testifying that at this meeting she specifically mentioned to Davidson the racial slurs aimed at her by members of the Fire Department and the comments that Kreger personally had made to her regarding her gender.[31] Construing the evidence in the light most favorable to Huffman, the non-movant, her evidence is sufficient to meet her summary judgment burden on the first element of her *prima facie* case.

**\*11** *Adverse Employment Action.* As discussed previously, the City does not dispute that Huffman suffered an adverse employment action either when she was placed on administrative leave or when her employment was terminated.[32]

*Causal Connection.* The Court also finds that there is a genuine issue of material fact on the third element of Huffman's retaliation claim *prima facie* test—the existence of a causal link between the protected activity and the adverse employment action. The burden of establishing this "causal link" element of a *prima facie* case is much less onerous than the standard for proving "but-for" causation required for the determination of the ultimate issue of retaliation. *See Ackel v. Nat'l Commc'n, Inc.,* 339 F.3d 376, 385 (5th Cir.2003); *Sherrod v. American Airlines, Inc.,* 132 F.3d 1112, 1122 n. 8 (5th Cir.1998). "[A] plaintiff need not prove that her protected activity was the sole factor motivating the employer's challenged decision in order to establish the 'causal link' element of a prima facie case." *Long v. Eastfield Coll.,* 88 F.3d 300, 305 n. 4 (5th Cir.1996) (citing *De Anda v. St. Joseph Hosp.,* 671 F.2d 850, 857 n. 12 (5th Cir.1982)). However, Huffman must produce *some* evidence of a causal link between her protected activity and the adverse employment action. *Ackel,* 339 F.3d at 385.

In evaluating the "causal link" element of a retaliation claim, the Court focuses on three factors: "(1) the extent of the employee's disciplinary record; (2) whether the employer followed its policies and procedures in

dismissing the employee; and (3) the temporal relationship between the protected action and the termination." *Nowlin v. Resolution Trust Corp.,* 33 F.3d 498, 507 (5th Cir.1994); *see also Medina v. Ramsey Steel Co.,* 238 F.3d 674, 684 (5th Cir.2001) ("A 'causal link' is established when the evidence demonstrates that the employer's decision to terminate was based in part on knowledge of the employee's protected activity ... [such as where] the plaintiff shows that the employment decision and [her] protected activity were not wholly unrelated." (internal citations omitted)).

"[T]emporal proximity alone, when very close, can in some instances establish a *prima facie case* of retaliation." *Strong v. University Healthcare System, L.L.C.,* 482 F.3d 802, 808 (5th Cir.2007) (citing *Clark Co. Sch. Dist. v. Breeden,* 532 U.S. 268, 273–74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001)). In this case, Huffman presented evidence that her employment was terminated eight days after she made an oral report of discrimination to Davidson on April 5, 2006. Given this very close temporal proximity, a reasonable juror could conclude that Huffman suffered an adverse employment action due to her participation in a protected activity. *See Roberson v. Alltel Info. Servs.,* 373 F.3d 647, 655 (5th Cir.2004) ("In order to withstand summary judgment, [plaintiff] must offer evidence from which the jury may infer that retaliation, in whole or in part, motivated the adverse employment action.").

**\*12** Furthermore, Huffman has established that she received uniformly favorable evaluations in her annual performance reviews throughout her employment with the City, and her immediate supervisor was not questioned, let alone sanctioned, for any misconduct relating to the approvals he gave of Huffman's work on the demolition contracts.[33] The Court concludes that Huffman has presented sufficient evidence to establish a *prima facie* case of retaliation. Therefore, the burden shifts to the City to articulate a legitimate, nondiscriminatory reason for the termination of Huffman's employment.

**b. Legitimate Nondiscriminatory Reason**
For the reasons discussed previously, the City has articulated a legitimate, nondiscriminatory reason for its termination of Huffman's employment.[34]

**c. Pretext**
Because the City has advanced a legitimate nondiscriminatory reason for terminating Huffman's employment, the burden shifts back to Huffman to prove that the City terminated her employment not for its stated reason, but in retaliation for making an oral report of discrimination to Davidson. Huffman must demonstrate that a material issue of fact exists about whether the City's explanation was "merely a pretext for the real, retaliatory purpose." *Strong,* 482 F.3d at 806. To meet this burden Huffman must demonstrate that she would have been retained in the City's employ "but for" engaging in the protected activity. *Id.; Septimus,* 399 F.3d at 608. Huffman must show a "conflict in substantial evidence on the ultimate issue of retaliation," meaning evidence of "such quality and weight that reasonable and fair minded person in the exercise of impartial judgment might reach different conclusions ." *Sherrod,* 132 F.3d at 1122 (internal citations omitted).

While temporal proximity standing alone is insufficient to establish "but for" causation, a combination of suspicious timing with other significant evidence of pretext can be sufficient to survive summary judgment. *Evans v. City of Houston,* 246 F.3d 344, 355 (5th Cir.2001) (quoting *Shackelford v. Deloitte & Touche, LLP,* 190 F.3d 398, 409 (5th Cir.1999)). Huffman has presented such evidence. In addition to the evidence of pretext discussed previously with respect to Huffman's discrimination claim, Huffman presents evidence that Kreger was aware that she was filing a grievance against him. Matheson has testified that on April 5, 2006, when Kreger told him he would be put on administrative leave, Kreger informed him that "[Huffman] is filing a grievance against me," and that this was part of the reason that he, Matheson, was being put on administrative leave.[35]

The City contends that Matheson's testimony does not establish that Kreger knew that the grievance was related to alleged discriminatory incidents. However, there is a significant factual dispute about what Kreger knew about Huffman's complaint. Also, proving that Kreger knew the grievance was a complaint of discrimination is not required. It is sufficient that the sum total of Huffman's pretext evidence permit a reasonable jury to draw an inference of pretext. Considering all the evidence properly before the Court, the Court concludes that Huffman has raised a genuine fact issue that the City terminated her employment in retaliation for making a oral report of discrimination. Therefore, the City's motion for summary judgment on Huffman's retaliation claim is denied.

**B.** *Huffman's Motion for Partial Summary Judgment*
**\*13** Huffman seeks partial summary judgment on the City's affirmative defense that she failed to mitigate her damages. Huffman argues that she has provided credible evidence that she exercised reasonable diligence in

obtaining comparable employment after she was terminated by the City, and that the City has failed to disclose any evidence to prove that she failed to mitigate her damages. Specifically, Huffman asserts that the City "has not, and cannot, identify a single code enforcement job available to the plaintiff in this area for which she did not apply,"[36] and, therefore, has failed to meet its burden. The City argues that it has raised a genuine fact issue that Huffman failed to make reasonable efforts to obtain work, and, therefore, it is not required to establish the availability of substantially comparable employment.

"A party moving for summary judgment on an opponent's affirmative defense can obtain judgment as a matter of law by disproving an essential element of that defense." *Yturria v. Kerr–McGee Oil & Gas Onshore, LLC,* 291 F. App'x 626, 635 (5th Cir.2008) (unpublished) (citing *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986)). A plaintiff suing under Title VII has a duty to mitigate her damages by using reasonable diligence to obtain substantially equivalent employment. *Migis v. Pearle Vision, Inc.,* 135 F.3d 1041, 1045 (5th Cir.1998) (citing *Sellers v. Delgado College,* 902 F.2d 1189, 1193 (5th Cir.1990)). The employer has the burden of proving failure to mitigate, and may do so by demonstrating that substantially equivalent work was available and that the plaintiff did not exercise reasonable diligence to obtain it. *Sellers,* 902 F.2d at 1193. The employer must show not only that the plaintiff failed to exercise reasonable diligence, but that there were jobs available which plaintiff could have discovered and for which she was qualified. *See Sparks v. Griffin,* 460 F.2d 433, 443 (5th Cir.1972).[37]

The City has failed to present evidence raising a genuine fact issue as to whether substantially equivalent employment was available to Huffman. The City has submitted applications that Huffman submitted formal applications to various Texas municipalities for what appear to the Court to be code enforcement positions. The City, however, has not presented any evidence that there were substantially equivalent employment opportunities available for which Huffman did not apply. Because the City has failed to raise a genuine fact issue on this element of its affirmative defense, the Court does not reach the issue of whether Huffman failed to exercise reasonable diligence in obtaining employment.

Huffman has demonstrated that the City cannot prove an essential element of its affirmative defense that she failed to mitigate her damages. Huffman's motion for partial summary judgment [Doc. # 115] therefore is **granted** and, as a matter of law, the City is precluded from asserting a failure to mitigate defense at trial.[38]

### IV. *CONCLUSION*

*\*14* For the foregoing reasons, the Court concludes that there are genuine fact issues that preclude summary judgment dismissing Huffman's gender and national origin discrimination claims and her retaliation claim. The Court concludes, however, that Huffman has established that the City cannot prove an essential element of its affirmative defense that she failed to mitigate her damages. Huffman is therefore entitled to summary judgment on this affirmative defense. It is therefore

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 116] is **DENIED.** It is further

**ORDERED** that Plaintiff's Motion for Partial Summary Judgment [Doc. # 115] is **GRANTED.**

**Parallel Citations**

105 Fair Empl.Prac.Cas. (BNA) 1422

Footnotes

1   City's Motion is supplemented by a Memorandum of Law in Support [Doc. # 117] ("City's Mem.") to which Huffman has responded [Doc. # 129]. The City filed a Motion for Extension of Time to File Reply to Plaintiff's Response [Doc. # 133]. Huffman responded in opposition [Doc. # 136], and the City replied [Doc. # 141]. After full consideration, the Court concludes that the City's Motion for Extension of Time should be granted, and, therefore, the City's Reply [Doc. # 138] is deemed timely filed.

2   The City has responded [Doc. # 128], and Huffman has replied [Doc. # 131].

3   Huffman responded to these motions respectively [Docs. # 130 and # 144].

4   The City has responded [Doc. # 137].

5     Title VII provides that "[i]t shall be an unlawful employment practice for an employer ... to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

6     City's Reply [Doc. # 138], at 7. Recognizing that there is uncertainty about what constitutes race versus national origin discrimination, the Seventh Circuit has nonetheless held that Hispanics qualify as a "national origin group" as used in the EEOC regulations. *Salas v. Wisconsin Dept. of Corrections,* 493 F.3d 913, 923 (7th Cir.2007).

7     Deposition of JoAnn Huffman, Exh. A to City's Mem. [Doc. # 117], at 30.

8     *Id.* Huffman presents a copy of what she represents to be the United States Army Honorable Discharge of Louis Garza, and asserts this is her father's U.S. Army discharge certificate. The Louis Garza Discharge Papers, Exh. V to Huffman's Response [Doc. # 129]. This document lists Mr. Garza's race as "Mexican." The City has moved to strike this document from the record on the grounds that (i) the document is not authenticated, (ii) it constitutes hearsay as Huffman is relying on the Government's report of Huffman's father's alleged self-identification, and (iii) the document was not disclosed to the City during discovery. Huffman correctly points out that the burden of authentication is minimal and can be met by a *"prima facie* showing that the exhibit is what the proponent claims it to be."* WEINSTEIN'S FEDERAL EVIDENCE § 901.02[3] (2008); *United States v. Polk,* 56 F.3d 613, 631 (5th Cir.1995) (quoting Fed. R. Ev. 901(a)). Huffman relies first on the fact that the document has "distinctive characteristics, taken in conjunction with circumstances." Fed. R. Ev. 901(b)(4). Here, Exhibit V, a copy of the discharge record, appears to be Huffman's father's authentic United States Army Honorable Discharge record. The document has dark field with white print, the traditional appearance of these types of records. It has creases and rough edges, old fashioned typeface or font, with a large header stating the "Army of the United States," and has places for all the information one would expect on such a paper. The appearance of the document establishes for the purposes of summary judgment (but not for trial without further inquiry) that the document is authentic. Huffman also attempts to establish authenticity and admissibility through the "ancient document" provision of Rule 901. The document is dated 1945 and thus appears to have been in existence more than 20 years. However, Huffman has not presented at this time sufficient admissible evidence regarding the circumstances under which the document was found. Huffman's Response in Opposition to Defendant's Motion to Strike [Doc. # 144] contains no affidavit from Huffman's mother, the person Huffman states found the document. Huffman thus fails to establish in admissible form where and how the document was found, or the timing of its discovery.

      The City further objects that the information about Garza's "race" (as the pertinent block in the paper is called) in the discharge certificate is hearsay and inadmissible. Huffman fails to meet her burden on this objection. She has not established how the blank on which she relies was filled in. There is no evidence that Garza identified himself as "Mexican," as Huffman argues, rather than the Army doing so.

      Finally, the City objects to the timing of Huffman's production. The City's objection is persuasive. Despite the extended discovery period in this case, Huffman does not provide good cause to extend the discovery period for this purpose. The fact that she did not perceive until the summary judgment motion was filed that her status as a member of a protected class might be in issue is not sufficient explanation for the grossly late production. The Court declines to receive in evidence for summary judgment purposes the honorable discharge certificate.

9     Declaration of JoAnn Huffman, Exh. F to Huffman's Response ("Huffman Decl.") [Doc. # 129], ¶ 25. The City has moved to strike Huffman's declaration, arguing that it does not meet the standards of Rule 56(e) because it is merely conclusory and speculative. The Court relies only on aspects of ¶ 25 of Huffman's declaration that are sufficiently specific and admissible to meet summary judgment evidentiary standards. For instance, Huffman's statement that her father had all the physical features of a typical Hispanic man is not admitted as Huffman does not describe those characteristics.

10    *See* Huffman Decl., Exh. F to Huffman's Response [Doc. # 129], ¶ 25; Deposition of Robert Matheson, Exh. C to Huffman's Response [Doc. # 129], at 58–60, 66. The Court cannot locate, and the parties have not cited, any case in which a court expressly permitted a plaintiff to prevail on a Title VII national origin (or race) discrimination claim when the plaintiff failed to show definitive Hispanic heritage and relied solely on the second prong of the EEOC regulation § 1606.1. The Court does not reach that question here.

11    *Dews v. A.B. Dick Co.,* 231 F.3d 1016, 1073 (6th Cir.2002); *Halsell v. Kimberly–Clark Corp.,* 638 F.2d 285, 290*o*92 (8th Cir.1983).

12    In the Fifth Circuit, ADEA claims are analyzed using the burden shifting framework of Title VII. *Sandstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 896 n. 2 (5th Cir.2002).

13    Huffman's Response [Doc. # 129], at 23.

14      Deposition of Tom Sivley, Exh. J to Huffman's Response [Doc. # 129], at 18.

15      *Id.* at 26.

16      Huffman's Response [Doc. # 129], at 23.

17      None of the cases cited by the parties or other reported decisions located by the Court address circumstances similar to those presented here where there is a front line employee and her supervisor who approved of her conduct, with which upper management disagrees. The evidence in the cited cases involved comparators with obvious materially different circumstances from Huffman in this action.

18      Huffman's Response [Doc. # 129], at 23.

19      Affidavit of Ken O. Kreger, Exh. B to City's Mem. [Doc. # 117].

20      Affidavit of Marcus Winberry, Ex. J to City's Mem. [Doc. # 117].

21      "In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt.' " *Reeves,* 530 US. at 147 (citing *Wright v. West,* 505 U.S. 277, 296, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992)).

22      *See* Exh. G to Huffman's Response [Doc. # 129], at Bates No. 000029–000076.

23      Huffman Decl., Exh. F to Huffman's Response [Doc. # 129], ¶ 7

24      *Id.*

25      Deposition of Robert Matheson, Exh. C to Huffman's Response [Doc. # 129], at 122.

26      The Court does not make any finding in this regard.

27      Deposition of Robert Matheson, Exh. C to Huffman's Response [Doc. # 129], at 122

28      *Id.*

29      It is far from clear that the meeting on April 13, which occurred the day afer Kreger terminated Huffman's employment and was the meeting at which Huffman was informed of the termination decision, was an adequate substitute.
          In addition, Huffman offers her own declaration that "[w]ithin thirty minutes of leaving [the April 13, 2006,] meeting, my criminal lawyer got a call from the police department telling him that they [ (the police investigators) ] did not want to speak to me anymore." Huffman Decl., Exh. F to Huffman's Response [Doc. # 129]. The City objects to this statement as hearsay. Defendant's Memorandum of Law in Support of Defendant's Motion to Strike Plaintiff's Exhibits F, K, and V [Doc. # 140] at 22. The objection is sustained in the absence of testimony from Huffman's attorney. There is other evidence, however, that Huffman was never interviewed by the Conroe Police Department and that the police investigation into Huffman's conduct was terminated at some point after her employment ceased. These facts are admissible circumstantial evidence supporting Huffman's contention that her alleged violations of local and state purchasing laws were not the basis for a legitimate and meaningful criminal investigation, but rather that the criminal investigation was merely a cover used to justify the termination of Huffman's employment. It is also noted that the fact that Huffman, the target of the investigation, had the right to refuse to meet with or talk with the detectives is a fact the City may present at trial. It does not, however, preclude Huffman from arguing the sequence of events in support of her own position.

30      Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a), makes it unlawful "for an employer to discriminate against any ... employe[e]" who (1) "has opposed any practice made an unlawful employment practice by this subchapter," (opposition clause), or (2) "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter," (participation clause).

31      Huffman's Deposition, Exh. B to Huffman's Response [Doc. # 129], at 200–202.

32      *See supra* Section III.A.1.a.

33      *See* Exh. G to Huffman's Response [Doc. # 129], at Bates No. 000029–000076.

34      *See supra* Section III.A.1.b.

35      Deposition of Robert Matheson, Exh. C to Huffman's Response [Doc. # 129], at 98.

36      Huffman's Motion [Doc. # 115], at 6.

37      The City cites *Sellers v. Delgado Community College,* 839 F.2d 1132, 1139 (5th Cir.1988), for the proposition that if an employer proves an employee has not made reasonable efforts to obtain work, the employer does not also have to establish the availability of substantially comparable employment. This, however, conflicts with the earlier Fifth Circuit decision in *Sparks,* 460 F.2d at 443. One appellate panel may not overrule a decision, right or wrong, of a prior panel, absent *en banc* reconsideration or a superseding contrary decision of the Supreme Court. When faced with conflicting panel opinions, the earlier opinion controls. *See, e.g., United States v. Dial,* 542 F.3d 1059, 1060 (5th Cir.2008) ( "our rule of orderliness directs that 'one panel of this court cannot overrule the decision of another panel.' ") (citing *Lowrey v. Tex. A & M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir.1997)); *Rios v. City of Del Rio, Tex.,* 444 F.3d 417, 425 n. 8 (5th Cir.2006); *Barrientes v. Johnson,* 221 F.3d 741, 780 n. 30 (5th Cir.2000).
        The earliest Fifth Circuit precedent dictates that the City, in order to meet its burden of proof on its affirmative defense that Huffman failed to mitigate her damages, must establish that Huffman failed to exercise reasonable diligence *and* that there were substantially equivalent jobs available that she could have discovered and for which she was qualified.

38      The City has filed a Motion to Strike Plaintiff's Declaration [Doc. # 127] ("City's Motion to Strike") in connection with Huffman's Motion. In granting Huffman's Motion, the Court does not rely on Huffman's Declaration. Therefore City's Motion to Strike [Doc. # 127] is **denied as moot.**

---

**End of Document**                                        © 2014 Thomson Reuters. No claim to original U.S. Government Works.