UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANNE BUCKINGHAM, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:13-CV-392 |
| | § | |
| BOOZ ALLEN HAMILTON, INC., | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM AND ORDER

Pending before the Court in this employment discrimination suit are Plaintiff Anne Buckingham and Defendant Booz Allen Hamilton's ("Booz Allen") cross-motions for summary judgment on a failure to mitigate defense. (Doc. Nos. 56, 57).[1] After reviewing the summary judgment record, the parties' arguments, and the applicable law, the Court finds that Booz Allen has not produced evidence that substantially equivalent jobs were available to Ms. Buckingham during the duration of the contract she was denied. Therefore, the Court **GRANTS** Ms. Buckingham's Motion for Summary Judgment.

I.   **BACKGROUND**[2]

Ms. Buckingham worked for Booz Allen for approximately eleven years, with a seven-month hiatus in 2007. Her final position with the company was as a Reports Officer assigned to a Department of Homeland Security ("DHS") contract. Ben Hayhurst was the only other Booz Allen employee who was a Reports Officer on this contract.

When the DHS contract ended, both Ms. Buckingham and Mr. Hayhurst were issued "lack of work" notices, informing them that they would be terminated if they did not find a new

---

[1] All docket references are to Civil Action No. 4:13-CV-392.
[2] The following facts are undisputed unless otherwise noted.

1

Booz Allen position within four weeks. Around this time, Ms. Buckingham and Mr. Hayhurt's supervisor, Matthew Tom, learned that a new contract position was available with DHS. Mr. Tom offered this position to Mr. Hayhurst, and Mr. Hayhurst accepted. Mr. Hayhurst worked for Booz Allen under this new contract for approximately nine months.

In anticipation of her termination, Ms. Buckingham told Mr. Tom that she was interested in performing open source research for Booz Allen. Mr. Tom sent Ms. Buckingham's resume to another Booz Allen employee to see if a position was available. Ms. Buckingham was informed that she did not have the necessary security clearance for that particular work.

After Ms. Buckingham's termination, she reviewed online job postings for government positions, and positions that required security clearances. She sent resumes to private companies, and interviewed with two employers, including Immigration Customs Enforcement ("ICE"). ICE offered Ms. Buckingham a position that paid $87,000 annually, but she declined it. Ms. Buckingham estimates that she spent approximately five to six hours a month looking for a job during this time period.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is warranted if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Importantly, "the mere existence of some factual dispute will not defeat a motion for summary judgment; Rule 56 requires that the fact dispute be genuine and material." *Willis v. Roche Biomed. Lab.*, 61 F.3d 313, 315 (5th Cir. 1995). Material facts are those whose resolution "might affect the outcome of the suit under the governing law." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party." *Id.* (citing *Anderson*, 477 U.S. at 248). A court may consider any evidence in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). However, hearsay, unsubstantiated assertions, and unsupported speculation will not suffice to create or negate a genuine issue of fact. *McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991); *Shafer v. Williams*, 794 F.2d 1030, 1033 (5th Circ. 1986); see Fed. R. Civ. P. 56(c)(4).

The moving party bears the burden of demonstrating that there is no genuine dispute as to any material fact, but it need not negate the elements of the nonmoving party's case. Fed. R. Civ. P. 56(a); *Willis*, 61 F.3d at 315 (citing *Celotex*, 477 U.S. at 322-23); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). If the burden of proof at trial lies with the nonmoving party, the moving party may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. However, "[i]f the moving party fails to meet [its] initial burden, the motion must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*)).

Once the moving party has met its burden, the nonmoving party must come forward with specific evidence and articulate precisely how it supports its claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). Simply resting on the allegations in the pleadings will not suffice. Neither will this burden be satisfied "by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"

3

*Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court must draw all reasonable inferences in the light most favorable to the nonmoving party, and it cannot make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 255; *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

### III. LEGAL FRAMEWORK: FAILURE TO MITIGATE

A plaintiff suing under Title VII has a duty to mitigate her damages by using reasonable diligence to obtain substantially equivalent employment. *Migis v. Pearle Vision Inc.*, 135 F.3d 1041, 1045 (5th Cir. 1998). The employer has the burden of proving a failure to mitigate, and may do so by demonstrating that substantially equivalent work was available and that the plaintiff did not exercise reasonable diligence to obtain it. *See Sellers v. Delgado College*, 902 F.2d 1189, 1193 (5th Cir. 1990); *see also Huffmam v. City of Conroe, Tex.*, No. H-07-1964, 2009 WL 361413, *14 (S.D. Tex. Feb. 11, 2009). "Substantially equivalent employment" is that "employment which affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the position from which the Title VII claimant has been discriminatorily terminated." *Sellers*, 902 F.2d at 1193. The point of comparison "must be the employment position with respect to which discrimination occurred." *Boehms v. Crowells*, 139 F.3d 452, 461 (5th Cir. 1998). The reasonableness of a Title VII claimant's diligence "should be evaluated in light of the individual characteristics of the claimant and the job market." *Sellers*, 902 F.2d at 1193.

The Court acknowledges that recent Fifth Circuit decisions state that, if an employer proves that an employee has not made reasonable efforts to seek out employment, it need not show the availability of substantially equivalent employment. *See Sellers*, 902 F.2d at 1193 (5th

4

Cir. 1990); *Jackson v. Host. Intern., Inc.*, 426 Fed.Appx. 215, 222 (5th Cir. 2011). These decisions diverge from a prior Fifth Circuit ruling which required employers to prove both elements of the failure to mitigate defense. *See Sparks v. Griffin*, 460 F.2d 433, 443 (5th Cir. 1972). However, a subsequent Fifth Circuit panel cannot overrule a prior Fifth Circuit holding without an *en banc* decision. *United States v. Dial*, 542 F.3d 1059, 1060 (5th Cir. 2008) ("our rule of orderliness directs that 'one panel of this court cannot overrule the decision of another panel'"). Thus, this Court must follow the earlier ruling in *Sparks*, and require Booz Allen to demonstrate both the availability of substantially equivalent work and the lack of diligence to obtain it.

## IV. ANALYSIS

In its Answer to Ms. Buckingham's Complaint, Booz Allen alleges that Ms. Buckingham failed to mitigate her damages, and it is entitled to an offset to the extent of any mitigation. (Doc. No. 6 at 9.) Ms. Buckingham now moves for summary judgment on this defense, arguing that Booz Allen has not identified substantially equivalent work that was available, or established that Ms. Buckingham was not diligent in applying for these positions. In response, Booz Allen identifies two sets of positions it believes are substantially equivalent to the job Ms. Buckingham was denied – (1) contract positions that were converted into government positions and (2) five open positions within Booz Allen that were listed on the company's external website. Further, Booz Allen contends that Ms. Buckingham's job search was not reasonably diligent in light of the unique nature of her work and the market conditions.

### A. Available Booz Allen Positions

Ms. Buckingham asks the Court to exclude any evidence of open positions within Booz Allen because these positions were not disclosed during discovery. Until it filed its most recent Motion for Summary Judgment (Doc. No. 57), Booz Allen had not offered any evidence of

5

openings within the company that were analogous to the position that Ms. Buckingham was denied. Instead, Booz Allen argued that DHS planned to convert the Report Officer positions that Ms. Buckingham and Mr. Hayhurst held into government positions. (Doc. No. 44 at 11.) At the close of discovery, the record was silent on openings within the company.

Further, when Ms. Buckingham requested that Booz Allen produce a corporate representative to testify about the factual bases of its affirmative defenses, Booz Allen objected by sending written opposition to Ms. Buckingham. As made clear by Rule 37, however, Booz Allen's written objections did not exempt it from producing a corporate representative. Fed. R. Civ. P. 37(d)(2) ("A failure described in Rule 37(d)(1)(A) is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c)."). As the result of Booz Allen's failure to produce a corporate representative on this topic, Ms. Buckingham was unable to question Booz Allen's employees about the availability of substantially equivalent positions within the company.

The Court is persuaded that evidence of open positions within Booz Allen during the nine-month window in question should be excluded under Rule 37. Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."). Booz Allen's failure to disclose these positions until now, months after discovery ended, was not substantially justified, nor was it harmless. The availability of these internal positions strengthens Booz Allen's failure to mitigate defense, and Ms. Buckingham should have had an opportunity to investigate these positions before the discovery period closed. Had Ms. Buckingham learned of these positions sooner, she could have questioned Booz Allen employees about them during deposition. Instead,

6

because of the belated disclosure, Ms. Buckingham is forced to respond to Booz Allen's arguments with little information. Since Booz Allen failed to disclose the availability of these positions in compliance with Rule 26, the Court must exclude and cannot consider any evidence of the five open company positions.

### B. Available Government Positions

Booz Allen also identifies newly created DHS positions as substantially equivalent work that was available to Ms. Buckingham. In support of its contention, Booz Allen notes that Mr. Tom told Ms. Buckingham that DHS was "transitioning [reports officer positions] most likely to government billets." (Tom Dep. 54:14-55:5.) Mr. Hayhurst was also aware of the possibility of government openings, stating "the government let us know that they were probably going to be ending the contract and hiring federal employees into those positions." (Hayhurst Dep. 15:17-20.) In fact, at the time his deposition was taken in April 2014, Mr. Hayhurst was employed by the government in one of these converted positions. Finally, even Ms. Buckingham acknowledges that she was aware of the prospective transition saying, "[t]hey were talking about converting the [reports officer] positions to government positions, I'm not sure if they ever did or not." (Buckingham Dep. 199:2-4.)

These three statements fall short of meeting Booz Allen's burden of demonstrating that these government positions constituted substantially equivalent work that was available during the duration of the disputed contract. All three statements discuss the possibility of a transition, but none of the witnesses affirmatively states that this transition was made. Importantly, there is also no evidence in the record of when this transition occurred, and whether it was made during the nine-month time period in question. Defendant's conclusory statement that "[Ms.] Buckingham could have continued in the same role as a DHS employee," (Doc. No. 57 at 14) is

wholly unsubstantiated. Mr. Hayhurst's subsequent employment with DHS proves only that government positions were available after the contract in question ended, and is immaterial to Ms. Buckingham's failure to mitigate. From the available information, the Court cannot reasonably infer that this transition occurred during the relevant time period.

Additionally, there is no evidence in the record about the promotional opportunities, compensation, job responsibilities, working conditions, or status of the converted government positions. Mr. Hayhurst testified that he makes $83,000 in his current government position, significantly less than what he and Ms. Buckingham were earning before her termination. (Hayhurst Dep. 140:24-141:5.) But, since there is no indication that this position was even available during the nine-month duration of the contract in question, this salary cannot serve as a point of comparison. It is Booz Allen's responsibility to come forward with specific evidence to demonstrate that the government and contract positions were substantially equivalent. Without evidence of the opportunities, responsibilities, conditions and status afforded by the DHS positions, Booz Allen has failed to satisfy this obligation.

Since the Court finds that Booz Allen has not met its burden in demonstrating the availability of substantially equivalent jobs, it need not reach the question of whether Ms. Buckingham was reasonably diligent in seeking alternate work. Booz Allen has been unable to offer evidence that the DHS positions were available during the time period in question, or that these positions were comparable in compensation, working conditions, promotional opportunities, or status to the position Ms. Buckingham was denied. Given the dearth of evidence, the Court finds that Ms. Buckingham is entitled to summary judgment on Booz Allen's failure to mitigate defense.

## V. CONCLUSION

For the above reasons, the Court **GRANTS** Ms. Buckingham's Motion for Summary Judgment on Booz Allen's failure to mitigate defense. The Court **DENIES** Booz Allen's Motion for Summary Judgment.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 30th day of October, 2014.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE